IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILSON RAMIREZ, | No. 4:22-CV-01978 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| WARDEN J. SAGE, | |
| Respondent. | |

MEMORANDUM OPINION

MARCH 10, 2023

Petitioner Wilson Ramirez was confined at the Federal Correctional Institution, Schuylkill (FCI Schuylkill) in Minersville, Pennsylvania, at the time he filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] In his petition, he challenges the determination made by the Federal Bureau of Prisons (BOP) that he is not eligible for application of time credits earned under the First Step Act of 2018.[2] For the reasons that follow, the Court must dismiss Ramirez's Section 2241 petition.

---

[1] It is unclear whether Ramirez is still incarcerated at FCI Schuylkill, if he has been released to a Residential Reentry Center, or if he has been released from custody. According to the BOP's inmate locator tool, Ramirez was "released" on February 13, 2023. *See* https://www.bop.gov/inmateloc/ (using Ramirez's BOP Register Number) (last visited Mar. 7, 2023).

[2] Pub. L. 115-391, 132 Stat. 5194 (2018).

I.  **BACKGROUND**

Ramirez is nearing the end of a 199-month sentence imposed by the United States District Court for the District of New Jersey for narcotics and weapons offenses.[3] His projected release date is August 9, 2023, via good conduct time.[4]

Ramirez asserts that he has earned 410 days of FSA time credits that should be applied to create an earlier release date.[5] He alleges that he has been told that he is scheduled to be placed into home confinement in "February,"[6] but maintains that he should be immediately released from custody.[7] Respondent counters that, because Ramirez has only had one assessment at a "low" or "minimum" risk of recidivism and the FSA requires at least two such consecutive assessments, Ramirez is not yet eligible to have his earned FSA credits applied.[8] Ramirez has not responded to Respondent's argument or otherwise filed a reply, so his petition is ripe for review.

II.  **DISCUSSION**

Although not mentioned by Respondent, the Court must determine whether Ramirez exhausted available administrative remedies. If Ramirez failed to exhaust

---

[3]  *See* Doc. 7-2 at 2 ¶ 3; *id.* at 6.  It appears that the original sentence imposed was 234 months, but that sentence was subsequently reduced to 199 months in 2014.  *See* Doc. 7-2 at 6.
[4]  Doc. 7-2 at 2 ¶ 3; *id.* at 6.
[5]  *See* Doc. 1 at 1-2.
[6]  Doc. 1 at 3.  The Court assumes Ramirez means February 2023.  *See* Doc. 1-2 at 2 (noting that his date for placement into home confinement is February 15, 2023).
[7]  Doc. 1 at 4.
[8]  *See* Doc. 7 at 7-8.

his administrative remedies, the Court must dismiss his petition because it is barred from reviewing his claims on the merits.[9]

### A.     Administrative Exhaustion

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims.[10]  Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy."[11]  The BOP has a specific internal system through which federal prisoners can request review of any aspect of their imprisonment.[12]  That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel.[13]

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review.[14]  Only in rare circumstances is exhaustion of

---

[9]   *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 762 (3d Cir. 1996); *Ryan v. United States*, 415 F. App'x 345, 347 (3d Cir. 2011) (nonprecedential) ("As [Petitioner] readily acknowledges that he failed to exhaust available administrative grievance processes, the District Court was correct to dismiss his petition." (citing *Moscato*, 98 F.3d at 760)).
[10]  *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).
[11]  *Moscato*, 98 F.3d at 761-62 (citations omitted)
[12]  *See generally* 28 C.F.R. §§ 542.10-.19.
[13]  *See id.* §§ 542.13-.15.
[14]  *See Moscato*, 98 F.3d at 761.

3

administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction.[15] Exhaustion is likewise excused when it would be futile.[16]

Ramirez concedes that he has not exhausted his administrative remedies.[17] He claims that he attempted informal resolution (through email) but that pursuing formal relief through the proper administrative channels would take too much time.[18] This argument has been consistently rejected by district courts, primarily because it would incentivize intentionally skirting the administrative process and waiting to file a Section 2241 petition until the petitioner's claimed release date is bearing down on the parties and the court.[19] "[T]he calamity—if any—which [Ramirez] might be facing is of his own making, and such hypothetical self-inflicted distress cannot serve as a basis for excusing the exhaustion

---

[15] *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).

[16] *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement).

[17] *See* Doc. 1 at 2.

[18] *See id.* (arguing that he "doesn't have the time it would take to file administrative remedies").

[19] *See, e.g.*, *Bortolotti v. Knight*, No. 22-cv-, 2022 WL 17959577, at *3 (D.N.J. Dec. 27, 2022) ("Courts have rejected these time restriction arguments because they allow prisoners to engage in the self-serving strategy of waiting until it is too late to engage in the administrative remedy process, and then argue that there is insufficient time for those remedies to run their course."); *Ortiz v. Zickefoose*, No. 10-cv-6767, 2011 WL 6140741, at *4 (D.N.J. Dec. 8, 2011) (collecting cases); *Velez v. Zickefoose*, No. 10-cv-3992, 2010 WL 5186158 at *3-4 (D.N.J. Dec. 15, 2010)(explaining that "such self-serving strategy has never been rewarded by the courts with habeas relief"); *Shoup v. Shultz*, No. 09-cv-0585, 2009 WL 1544664, at *5 (D.N.J. June 2, 2009).

requirement."[20] Consequently, the Court must dismiss Ramirez's Section 2241 petition for failure to exhaust administrative remedies.[21]

### B.     Application of FSA Earned Time Credits

Respondent argues that Ramirez is not eligible for application of FSA time credits because he has had only one risk assessment where he was found to be a "Low" or "Minimum" recidivism risk score: from August 31, 2022, to November 30, 2022.[22] Although the Court makes no determination on the merits of Ramirez's petition, it does observe the following.

If FSA time credits are properly earned by an eligible inmate, application of those time credits to a prisoner's sentence is governed by 18 U.S.C. § 3624(g). Among other requirements, to be eligible for application of earned time credits, a prisoner must (1) have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment"; (2) demonstrate through periodic risk assessments a recidivism risk reduction or maintain a "minimum or low recidivism risk" during the term of imprisonment; (3) have had the remainder of his term of imprisonment computed; and (4) as pertains to

---

[20]  *Shoup*, 2009 WL 1544664, at *5.
[21]  *See Moscato*, 98 F.3d at 761.
[22]  *See* Doc. 7 at 7-8; Doc. 7-2 at 10; Doc. 7-2 at 3 ¶ 7 (noting that Ramirez was assessed as a low risk "from August 31, 2022[,] to November 30, 2022"; that his next risk assessment is scheduled for February 23, 2023; and claiming that "only those inmates who have maintained a Low or Minimum Pattern risk assessment over two, consecutive periods may have their FSA Time Credits applied" and that Ramirez is not eligible to have his time credits applied "unless and until he achieves a Low or Minimum PATTERN risk at his next assessment on February 23, 2023" (citing 28 C.F.R. § 523.44(c)).

prerelease custody, have been determined under "the System" to be a minimum or low risk to recidivate pursuant to the last two reassessments of the prisoner or have had a petition to be transferred to prerelease custody approved by the warden of the prison; or, as to placement in supervised release, "been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner."[23]

Both the relevant statute and regulation demonstrate that Respondent's argument is only partially correct. Early transfer to prerelease custody through application of FSA time credits requires two consecutive low or minimum recidivism risk assessments.[24] But early transfer to supervised release does not. Early placement in supervised release requires, among other things, that the inmate "has been determined under the System to be a minimum or low risk to recidivate *pursuant to the last reassessment of the prisoner*."[25] Thus, although the Court makes no determination on the merits of Ramirez's petition, it must be noted that Ramirez could potentially qualify for application of earned FSA time credits even though he only has one risk assessment at a "low" or "minimum" risk level[26] if he meets the other requirements for early placement on supervised release.[27]

---

[23] *See* 18 U.S.C. § 3624(g)(1); *see also* 28 C.F.R. § 523.44(b)-(d).
[24] *See* 18 U.S.C. § 3624(g)(1)(D)(i)(I); 28 C.F.R. § 523.44(c)(1).
[25] 18 U.S.C. § 3624(g)(1)(D)(ii) (emphasis supplied).
[26] Neither Ramirez nor Respondent has informed the Court regarding the outcome of the February 23, 2023 risk assessment. *See* Doc. 7-2 at 3 ¶ 7. Indeed, it could be possible that Ramirez was released from custody and this reassessment never occurred.
[27] *See* 18 U.S.C. § 3624(g)(1)(A), (B), (C), D(ii); *id.* § 3624(g)(3).

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss Ramirez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[28]  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[28]  The Court additionally notes that, if Ramirez has been released from custody as indicated on the BOP's inmate locator tool, the instant Section 2241 petition must be dismissed for the additional reason that it is moot.  *See DeFoy v. McCullough*, 393 F.3d 439, 441 (3d Cir. 2005) (citing *Lane v. Williams*, 455 U.S. 624, 631 (1982)); *see also Spencer v. Kenma*, 523 U.S. 1, 18 (1998) ("[M]ootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so."); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 2001).